By the Court.—O’Gorman, J. (after stating the facts as above)
The retention by Clark of the $1,500, from the amount of $10,000, to which Secor was clearly entitled, was not warranted by any principle of law or equity, or by any consideration disclosed by the evidence. The whole sum of $10,000, when it reached the possession of Clark, was, under the terms of the agreement between Fithian and Secor, the property of Secor, to the possession of which he was entitled, even before the right of Fithian to the payment of his claim on the New England Iron Co. accrued.
The assignment made by Secor to Clark, was not to Clark as executor of Fithian, but to him individually, and he had no right or title to demand such assignment. His retention of this $1,500 was wholly indefensible.
It cannot be claimed that it was agreed to, as part of a settlement of a disputed claim to that money, and it can only be sustained on the theory that it was a gift by Secor, to Clark. The relations of Secor to Clark, however, were such as would render a gift by Secor to Clark inadmissible.
When Clark received $10,000, the property of Secor, being part of the larger amount of $25,000, he held that $10,000, in a fiduciary capacity, until paid over by him to Secor, and a gift, in such a case, could not be sustained in equity, but would have been a constructive fraud. Story’s Équity Jurisprudence, §§ 307, 321, 322 and 323.
The motives which led Secor to consent to this deduction from the amount, wdiich he was entitled to receive, are thus stated by him in evidence: “ I signed the assignment because I believed that Clark would use every device to prevent or delay the collection of the money; *168 also because I believed it would take some time to recover a judgment against him for the money, and that after the recovery of a judgment I feared our ability to collect it, and I thought the amount was too large to hazard its remaining with him pending a suit for its Collection; and therefore' I unwillingly signed the assignment.”
From this it appears that Secor was not a willing party to the acquisition by Clark of this $1,500, but, on the contrary, that his will was subdued by fear of the possible loss of the whole amount, unless he accepted the terms imposed on him by Clark. The parties were clearly not on equal terms, and, as the evidence now stands, it must be presumed that an unfair advantage was taken against the plaintiff, Secor, of the position of comparative dependence in which he was placed.
In the case of Fisher v. Bishop, 108 N. Y. 25, the rule of equity in cases of this kind is clearly stated. The opinion of Lord Cranworth is there cited and is as follows: “ There is no branch of the jurisdiction of the court of chancery, which it is more ready to exercise, than that which protects infants and persons in a situation of dependence, as it were, upon others, from being imposed upon by those upon whom they are so dependent. The familiar cases of the influence of a parent over his child, of a guardian over his ward, of an attorney over his client, are best instances.” And Lord Eldon is also cited as holding that to be “ the great rule applying to trustees, attorneys, or any one else.” Ch. J. Rugee in the same case says: “ It will be seen that the rule is not limited to cases of attorney and client, guardian and ward, trustee or cestui que trust, or other similar relations, but it holds good wherever fiduciary relations exist, and there has been a confidence reposed which invests the person with an advantage in treating with the person so confiding. When this relation is shown to exist, it imposes the burden of proof upon the person taking securities, or making contracts enuring to his *169 benefit, to show that the transaction is just and fair, and that he has derived no unfair advantage from his fiduciary relation.”.....“ The doctrine of equity0concerning undue influence is very broad. It reaches every case and grants relief, where influence is acquired and abused, or where confidence is reposed and betrayed.” Ib.
One who occupies a position of trust towards another, should, in good faith and common honesty, be precluded from taking advantage of his situation and using the information therein acquired to the detriment or disadvantage of his employer.
In my opinion, the facts of the case at bar sufficiently show that Clark held toward Secor a fiduciary relation, and a position so controlling and so suggestive of danger to Secor, that the burden was cast upon Clark of showing that the transaction on his part was consistent with perfect good faith, and involved no unfair advantage as against Secor, and no influence tending to disturb his judgment, or force upon him a concession which otherwise he never would have made.
There is no good reason, and no real consideration for the retention by Clark of any part of this $10,000, which was the property of Secor. In the absence of all proof that he was justified in withholding it, it seems to be the clear duty of a court of equity to interpose its protection against so manifest a wrong. Story’s Equity Jurisprudence, page 311, notes, and page 321.
In fine, I have arrived at the conclusion, which I believe to be in harmony with the authorities above cited and with the principles of equity, that Clark, when the $25,000 were paid by the New England Company to him, held $10,000 thereof, as the money of Secor, and for his benefit, and was bound to pay over the same to him in full on demand; that Clark held the said sum of $10,000, in a fiduciary capacity, and any agreement, gift, or concession, or assent, on the part of Secor, to the retention by Clark of any part of the said money is *170 open to the examination and criticism of a court of equity; and such agreement, gift, concession, or assent should not be held valid and binding on Secor, unless Clark proved affirmatively that he had acted in good faith in the transaction and that he rendered sufficient consideration therefor; that there is sufficient evidence in this case, as it now stands, that Secor in signing the assignment of his claim for $10,000 to Clark for $8,500, was induced by the fact that Clark held towards him in the transaction, an attitude of superior and oppressive power, by reason of which his free will was controlled to his injury and loss, and that the assignment, so far as it contained an assent to the retention by Clark of $1,500 out of the $10,000, was of no binding force or effect on Secor; that the evidence does not disclose that any actual consideration was given by Clark for any such gift, agreement, or assent on the part of Secor.
The judgment should be reversed, and a new trial ordered, with costs to abide the event of the action.
Sedgwick, Ch. J., concurred.